# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE STEM, INC. DERIVATIVE LITIGATION | ) ) ) ) | Civil Action No. 23-1011-MN (Consolidated) |

## REPORT AND RECOMMENDATION

Pending before the Court in this consolidated shareholder derivative action involving litigation brought by Plaintiffs Laurie A. Hanna ("Hanna"), Samhita Gera ("Gera") and Denish Bhavsar ("Bhavsar," collectively "Plaintiffs" or the "named Plaintiffs") is Nominal Defendant Stem, Inc.'s ("Stem" or "Company") motion to dismiss the operative Verified Shareholder Derivative Complaint ("Complaint"), filed pursuant to Federal Rules of Civil Procedure 23.1 and 12(b)(6) ("Stem's Motion to Dismiss" or "Stem's Motion"), (D.I. 40), as well as the motion of Defendants John Carrington ("Carrington"), Eric Scheyer ("Scheyer"), William Bush ("Bush"), Michael D. Wilds ("Wilds"), Michael C. Morgan ("Morgan"), Adam E. Daley ("Daley"), Alec Litowitz ("Litowitz"), Desirée Rogers ("Rogers"), C. Park Shaper ("Shaper"), David Buzby ("Buzby"), Anil Tammineedi ("Tammineedi"), Lisa L. Troe ("Troe"), Laura D'Andrea Tyson ("Tyson"), Jane Woodward ("Woodward"), Larsh Johnson ("Johnson"), Alan Russo ("Russo"), Bryan Ho ("Ho"), Prakesh Patel ("Patel") and Star Peak Sponsor LLC ("Sponsor") (collectively, the "Individual Defendants," and together with Stem, "Defendants") seeking to dismiss the First Claim of the Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) ("Individual Defendants' Motion to Dismiss" or "Individual Defendants' Motion," and together with Stem's Motion, the "motions to dismiss" or the "motions"), (D.I. 42), and proposed intervenor Edward Manetta's ("Manetta") motion to intervene ("Motion to Intervene"), filed pursuant to Federal Rule of Civil Procedure 24(b), (D.I. 48).

For the reasons that follow, the Court recommends that: (1) the Individual Defendants' Motion be GRANTED as to the First Claim, in the manner set out below; (2) Stem's Motion to Dismiss be GRANTED as to the Second through Ninth Claims, in the manner set out below; and (3) the Motion to Intervene be DENIED as MOOT.

I.  BACKGROUND

   A.  The Parties

Stem is a Delaware corporation headquartered in San Francisco, California. (D.I. 34 at ¶ 44) It offers artificial intelligence ("AI")-driven clean energy storage systems (e.g., batteries and related software and hardware) to its customers, which include commercial and industrial enterprises, independent power producers, renewable project developers and energy grid operators. (*Id*. at ¶ 2) Stem was formerly known as Star Peak Energy Transition Corp. ("Star Peak"); it is a successor by merger to legacy Stem, Inc. ("Legacy Stem"). (*Id*. at ¶¶ 1, 3, 8) Star Peak was a special purpose acquisition company, "a publicly traded corporation with a two-year life span formed with the sole purpose of effecting a merger . . . with a privately held business to enable it to go public." (*Id*. at ¶ 3)

Plaintiffs are current shareholders of Stem Common Stock. (D.I. 1 at ¶¶ 26, 27; D.I. 34 at ¶ 43) Hanna facially alleges that she has held Stem common stock continuously and at all relevant times (i.e., from December 4, 2020 through April 3, 2023). (D.I. 34 at ¶ 43; *see id*. at ¶ 1) Gera has continuously held Stem common stock since purchasing it on February 23, 2021. (D.I. 1 at ¶ 26) Bhavsar has held Stem common stock continuously since purchasing it on January 29, 2021. (*Id*. at ¶ 27) The suit is filed derivatively on behalf of Stem. (D.I. 34 at ¶ 1)

Individual Defendant Sponsor is a Delaware limited liability company that sponsored Star Peak. (*Id.* at ¶ 3) The remaining Individual Defendants are current and former members of Stem/Star Peak's Board of Directors and/or executives at Stem/Star Peak. (*Id.* at ¶¶ 45-98)

### B. Factual Background

On December 4, 2020, Star Peak filed a Form 8-K with exhibits with the United States Securities and Exchange Commission ("SEC"), announcing it had entered an agreement to merge with Legacy Stem. (*Id.* at ¶ 8) The post-Merger entity was expected to be worth $1.35 billion and have $608 million in gross proceeds. (*Id.* at ¶¶ 8, 142) Thereafter, Star Peak "filed a registration statement in connection with the proposed Merger on December 17, 2020, on Form S-4 with the SEC (the 'Registration Statement'), followed by a joint prospectus and proxy statement on Form 424B3 (the 'Merger Proxy,' and together with the Registration Statement, the 'Offering Documents')." (*Id.* at ¶ 8) The Boards of Star Peak and Legacy Stem filed the Merger Proxy on March 30, 2021, seeking shareholder approval for the Merger and certain charter proposals, among other things. (*Id.* at ¶ 23) With shareholder approval, the companies merged on April 28, 2021 (the "Merger"). (*Id.* at ¶¶ 8, 154) Legacy Stem survived as a wholly owned subsidiary of Star Peak, and Star Peak renamed itself "Stem, Inc." (*Id.* at ¶ 154) Stem then undertook the business operations of Legacy Stem. (*Id.*)

Additional facts relevant to resolution of the instant Motions will be discussed in Section III.

### C. Procedural Background

Plaintiffs' allegations in this case relate in part to allegations in a related securities case: *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC (N.D. Cal. May 12, 2023) (the "Securities Action"). The Securities Action is a class action lawsuit, which was initiated in the

United States District Court for the Northern District of California ("Northern District of California") on May 12, 2023 against Stem, Star Peak and a group of the Individual Defendants. *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC, D.I. 1 (N.D. Cal. May 12, 2023).[1] The claims in the Securities Action include alleged violations of Section 14(a) ("Section 14(a)") of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9, violations of Section 20(a) of the Exchange Act, violations of Section 10(b) ("Section 10(b)") of the Exchange Act and Rule 10b-5, and violations of the Exchange Act for Insider Selling. *Id.*, D.I. 87 at ¶¶ 378-420 (N.D. Cal. Oct. 17, 2023). The defendants moved to dismiss all claims in the Securities Action, and the Northern District of California granted the defendants' motion in its entirety. *Petersen v. Stem, Inc.*, Case No. 23-cv-02329-MMC, 2024 WL 4602710 (N.D. Cal. Aug. 30, 2024). Thereafter, the plaintiffs filed a first amended consolidated complaint. *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC, D.I. 127 (N.D. Cal. Nov. 8, 2024). The defendants have moved to dismiss all claims within the first amended consolidated complaint, and the Securities Action remains pending. *Id.*, D.I. 128 (N.D. Cal. Dec. 20, 2024).

Plaintiffs Gera and Bhavsar began the instant lawsuit on August 26, 2023, via the filing of a complaint in the Northern District of California, brought on behalf of Stem and against certain of the Defendants. (D.I. 1) Pursuant to the parties' stipulation, the case was transferred to this Court on September 15, 2023. (D.I. 20)

On December 15, 2023, Plaintiff Hanna filed another derivative action in this Court on behalf of Stem against all Defendants (the "Hanna Action"). (Civil Action No. 23-1436-MN,

---

[1] The Securities Action was consolidated with related cases in the Northern District of California. *In re Stem, Inc. Sec. Litig.*, Civil Action No. 3:23-cv-2329-MMC, D.I. 63 (N.D. Cal. Aug. 10, 2023).

D.I. 1) Pursuant to all parties' stipulation, the two actions were consolidated into the instant action, and the Complaint in the Hanna Action was designated the operative Complaint in this case. (D.I. 32)

The operative Complaint, which was then re-filed, (D.I. 34), asserts nine claims:

- First Claim: Violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), and Rule 14a-9, 17 C.F.R. § 240.14a-9, Against Scheyer, Morgan, Wilds, Daley, Litowitz, Rogers and Shaper, (*id.* at ¶¶ 456-64);

- Second Claim: Breach of Fiduciary Duties Against Individual Defendants, (*id.* at ¶¶ 465-77);

- Third Claim: Unjust Enrichment Against Individual Defendants, (*id.* at ¶¶ 478-82);

- Fourth Claim: Abuse of Control Against Individual Defendants, (*id.* at ¶¶ 483-86);

- Fifth Claim: Gross Mismanagement Against Individual Defendants, (*id.* at ¶¶ 487-91);

- Sixth Claim: Waste of Corporate Assets Against Individual Defendants, (*id.* at ¶¶ 492-97);

- Seventh Claim: Contribution Under Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b), and Section 21D ("Section 21D") of the Private Securities Litigation Reform Act ("PSLRA"),[2] 15 U.S.C. § 78u-4(f), Against Carrington, Bush, Scheyer, Wilds, Morgan, Daley, Litowitz, Rogers, Johnson, Patel, Russo, Ho and Shaper, (*id.* at ¶¶ 498-502);

- Eighth Claim: Contribution Under Section 21D of the PSLRA, 15 U.S.C. § 78u-4(f), and Section 11(f) ("Section 11(f)") of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §

---

[2] Plaintiffs assert a claim for contribution "[u]nder Section . . . 21D of the Exchange Act[.]" (D.I. 34 at 175; *see also id.* at ¶¶ 38, 501, 511) However, the statutory citation that Plaintiffs utilize here is to Section 21D of the PSLRA, 15 U.S.C. § 78u-4(f), as the PSLRA "governs the application of any private right of action for contribution asserted pursuant to the Exchange Act[,]" *Lemon Bay Partners LLP v. Hammonds*, C.A. No. 05-327 GMS, 2007 WL 1830899, at *4 (D. Del. June 26, 2007).

        77k(f)(1), Against Scheyer, Wilds, Morgan, Daley, Litowitz, Rogers and Shaper, (*id.* at ¶¶ 503-12); and

- Ninth Claim: Aiding and Abetting Breach of Fiduciary Duty Against Carrington, Bush, Buzby and Tammineedi, (*id.* at ¶¶ 513-19).

Prior to the filing of the Complaint, no demand was made on Stem's Board to institute the action. (D.I. 34 at ¶ 438) Plaintiffs assert that any such demand would have been futile. (*Id.* at ¶¶ 437-55)

On April 1, 2024, Stem filed Stem's Motion to Dismiss, (D.I. 40); the Individual Defendants' Motion to Dismiss was filed on the same day, (D.I. 42). Manetta filed the Motion to Intervene on June 20, 2024. (D.I. 48) All of the Motions were fully briefed as of August 2, 2024. (D.I. 64) The Motions were all referred to the Court for resolution by United States District Judge Maryellen Noreika on September 5, 2024. (D.I. 70)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a), the complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, but disregarding any legal conclusions. *Id.* at 210-11. Second, the court determines whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

### III.     DISCUSSION

With their motions, Stem and the Individual Defendants make various arguments for dismissal; the Court will address certain of these arguments herein. In doing so, it will segregate its analysis by addressing the three categories of claims in this action: (1) the claims seeking contribution (i.e., the Seventh and Eighth Claims, or collectively, the "contribution claims"); (2) the First Claim, which alleges violation of Section 14(a) (the "Section 14(a) claim" and together with the contribution claims, the "federal claims"); and (3) the claims founded in state law (i.e., the Second, Third, Fourth, Fifth, Sixth and Ninth Claims, or collectively, the "state law claims").[3] Thereafter, the Court will discuss the Motion to Intervene.

#### A.     Contribution Claims

The Seventh and Eighth Claims both seek contribution from certain Defendants who are also named in the Securities Action. (D.I. 34 at ¶¶ 498-512) As was noted above, these two claims are brought pursuant to Section 10(b) of the Exchange Act, Section 21D of the PSLRA and Section 11(f) of the Securities Act. (*Id.*) In arguing for dismissal, Stem asserts that these contribution claims should be dismissed as unripe. (D.I. 41 at 6-7)

---

[3]     The Court addresses Stem's and the Individual Defendants' motions together, in light of the cohesive nature of the briefing and the parties' frequent cross-referencing of arguments made therein. (*See* D.I. 41 at 18, 19; D.I. 43 at 1, 2; D.I. 49 at 3 n.4, 17 n.13; D.I. 50 at 15)

In their answering brief, Plaintiffs did not address Stem's argument. (D.I. 49 at 5-9; *see* D.I. 61 at 2 (Stem noting Plaintiffs' lack of response)) As a result, Plaintiffs have forfeited or waived any argument that the contribution claims are ripe and should not be dismissed. *See e.g.*, *Turner v. Lam Rsch. Corp.*, Civil Action No. 23-435-CJB, 2024 WL 4766208, at *4 (D. Del. Nov. 13, 2024); *Jackson v. NuVasive, Inc.*, Civil Action No. CV 21-53-RGA, 2023 WL 6387866, at *2 (D. Del. Sept. 29, 2023); *vMedex, Inc. v. TDS Operating, Inc.*, C.A. No. 18-1662 (MN), 2020 WL 4925512, at *7 (D. Del. Aug. 21, 2020).[4] For this reason, the Court recommends that the Seventh and Eighth Claims be dismissed with prejudice.

### B. Section 14(a) Claim

The First Claim asserts a negligence-based claim under Section 14(a) of the Exchange Act[5] against Scheyer, Morgan, Wilds, Daley, Litowitz, Rogers and Shaper. (D.I. 34 at ¶¶ 456-64) "Section 14(a), and Rule 14a-9 promulgated thereunder, prohibit a corporation from issuing a proxy 'containing any statement which . . . is false or misleading with respect to any material

---

[4] The Court also notes that, even absent waiver or forfeiture here, it appears that Stem's argument regarding lack of ripeness would have been correct on the merits. *See, e.g.*, *DiBattista v. Greco*, Civil Action No. 20-590-RGA, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021) (citing cases); (D.I. 41 at 6-7).

[5] Section 14(a) claims may sound either in fraud or negligence (or both). *Cal. Pub. Emp.s' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004); *Gould v. Am.-Hawaiian S. S. Co.*, 535 F.2d 761, 777 (3d Cir. 1976). Plaintiffs state that the First Claim does not sound in fraud, and they do not disagree with Defendants' position that the claims sound in negligence. (D.I. 50 at 9 n.6) Because the First Claim alleges that "[i]n the exercise of reasonable care, the Individual Defendants should have known that . . . the statements . . . were materially false and misleading[,]" (D.I. 34 at ¶ 460), the Court agrees that the claim should be treated as sounding in negligence, *see Smith ex rel. Zion Oil & Gas, Inc. v. Carrillo*, Civil Action No. 18-1399-RGA, 2019 WL 6328033, at *7-8 (D. Del. Nov. 26, 2019) (observing that the plaintiff "allege[d] that Defendants 'should have known' that 'the statements' in the proxy statement were 'materially false and misleading'" and noting that the Section 14(a) claims in the pleading were alleged to be solely based on negligence).

fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.'" *Kiger v. Mollenkopf*, Civ. No. 21-409-RGA, 2021 WL 5299581, at *2 (D. Del. Nov. 15, 2021) (quoting 17 C.F.R. § 240.14a-9(a)) (citing 15 U.S.C. § 78n(a)(1)). To adequately state a Section 14(a) claim, the complaint must allege: "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007) (internal quotation marks omitted); *see also Garfield v. Shutterfly, Inc.*, 857 F. App'x 71, 74 (3d Cir. 2021); *In re Keryx Biopharms., Inc.*, 454 F. Supp. 3d 407, 412 (D. Del. 2020); *City of Detroit Police & Fire Ret. Sys. v. Hamrock*, C.A. No. 20-577-LPS, 2021 WL 877720, at *5 (D. Del. Mar. 9, 2021).

As an initial matter, the parties dispute whether the heightened pleading requirements of the PSLRA extend to Plaintiffs' Section 14(a) claim premised upon negligence. (D.I. 43 at 2, 8; D.I. 49 at 9 & n.6)  The United States Court of Appeals for the Third Circuit has yet to decide "whether Section 14(a) claims pled in terms of negligence are subject to Rule 9(b) or PSLRA particularity requirements." *Jaroslawicz v. M&T Bank Corp.*, Civil Action No. 15-897-RGA, 2017 WL 1197716, at *3 (D. Del. Mar. 30, 2017); *see also Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709 n.8 (3d Cir. 2020), *cert. denied,* 141 S. Ct. 1284 (2021); *In re Resolute Energy Corp. Sec. Litig.*, No. 21-1412, 2022 WL 260059, at *2 n.4 (3d Cir. Jan. 27, 2022).

Herein, the Court will assess the First Claim's allegations by requiring that they meet Rule 9(b)'s and the PSLRA's heightened pleading requirements.  There is no question that since Plaintiffs allege that "the statements contained in the Merger Proxy were materially false and misleading[,]" albeit negligently, (D.I. 34 at ¶ 460), Plaintiffs' Section 14(a) claim is subject to

9

the PSLRA. *In re Pattern Energy Grp. Inc. Sec. Litig.*, C.A. No. 20-275-MN-JLH, 2021 WL 311257, at *9 (D. Del. Jan. 28, 2021), *report and recommendation adopted,* 2021 WL 765760 (D. Del. Feb. 26, 2021); *see also Resnik v. Woertz*, 774 F. Supp. 2d 614, 630 (D. Del. 2011); *In re Keryx Biopharms.*, 454 F. Supp. 3d at 412; *Schaper v. LENSAR, Inc.*, C.A. No. 23-692-JLH, 2024 WL 4817656, at *2 (D. Del. Nov. 18, 2024). And the text of Section 78u-4(b)(1) of the PSLRA states that:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant –
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1). The statute is unambiguous; the heightened pleading requirement "applies '[i]n *any* private action arising under' the Exchange Act." *Kooker ex rel. Hecla Mining Co. v. Baker*, 497 F. Supp. 3d 1, 6 (D. Del. 2020) (quoting 15 U.S.C. § 78u-4(b)(1)) (emphasis in original); *see also Wayne Cnty. Emp.s' Ret. Sys. v. Mavenir, Inc.*, Civil Action No. 18-1229-CFC, 2021 WL 311284, at *5 (D. Del. Jan. 29, 2021), *report and recommendation adopted,* 2021 WL 1147042 (D. Del. Mar. 25, 2021); *In re U.S. W., Inc. Sec. Litig.*, 201 F. Supp. 2d 302, 305 (D. Del. 2002), *aff'd,* 65 F. App'x 856 (3d Cir. 2003). Therefore, Section 78u-4(b)(1) extends Rule 9(b)'s requirements to Section 14(a) claims, like this one, that relate to the making of misleading statements. And in light of this, to plead their Section 14(a) claim, Plaintiffs must "set forth the details of allegedly fraudulent statements or omissions, including who was

involved, where the events took place, when the events took place, and why any statements were misleading." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002); *see also City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, Civ. No. 2:23-CV-04146 (WJM), 2024 WL 4370833, at *6 (D.N.J. Oct. 2, 2024); *see In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d 477, 489 (D. Del. 2012).

From there, the Court turns to the Individual Defendants' arguments as to why the First Claim should be dismissed. (D.I. 43 at 2-10) The Court need only address the first of those arguments, as it is fundamental, and it impacts the scope of the entire claim in many ways.

This first argument implicates not only Section 78u-4(b)(1)'s requirement that PSLRA pleaders must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," but also a claimant's basic pleading obligations even under Rule 8. A claimant runs afoul of both of these pleading requirements if its complaint does "not easily provide a one-to-one connection between [assertedly] misleading statements [on the one hand] and the reasons why the statements are [said to be] misleading" on the other hand. *Gera v. Palihapitiya*, No. CV-23-02164-PHX-MTL, 2024 WL 3818602, at *4 (D. Ariz. Aug. 14, 2024). Such complaints are "commonly referred to as puzzle pleadings because, like loose pieces of a jigsaw puzzle, the reader must actively put together random allegations of misleading statements and other elements to form the basis of a claim." *Id.*; *see also In re Honeywell Int'l, Inc. Sec. Litig.*, 182 F. Supp. 2d 414, 416, 426 (D.N.J. 2002).

Generally, a puzzle pleading is one that "recite[s] lengthy statements attributed to the defendants, followed by a generalized list of reasons that the statements may have been false or misleading or a generalized list of omissions that were required to make the statement not misleading." *Tarapara v. K12 Inc.*, Case No. 16-cv-4069-PJH, 2017 WL 3727112, at *9 (N.D.

11

Cal. Aug. 30, 2017); *see also City of Southfield Fire & Police Ret. Sys.*, 2024 WL 4370833, at *7. To avoid improper puzzle pleading, allegations of false or misleading statements must be accompanied, e.g., "by pleading[] of specific facts indicating why those statement[s] were false[ or misleading.]" *Petersen*, 2024 WL 4602710, at *4 (internal quotation marks and citations omitted); *see also In re Wilmington Tr. Sec. Litig.*, 852 F. Supp. 2d at 490. Complaints that engage in puzzle pleading are routinely dismissed for failure to set out their allegations with sufficient particularity. *Petersen*, 2024 WL 4602710, at *4; *Gera*, 2024 WL 3818602, at *4.

The Individual Defendants argue that Plaintiffs have in fact engaged in impermissible puzzle pleading here. (D.I. 43 at 2-3)[6] They say this is so because, *inter alia*: (1) Plaintiffs do not always identify which potions of the alleged misstatements at issue are supposedly false or misleading; and (2) the Complaint tends to set out various paragraphs including certain statements, and then follow that up with a single paragraph asserting that these alleged statements were in some way false or misleading for any one of several reasons. (*Id.*)

Plaintiffs, for their part, deny that they have engaged in puzzle pleading. In explaining why not, they direct the Court to the allegations in paragraphs 217 to 244 of the Complaint, which are the allegations that describe the content of the relevant Merger Proxy. (D.I. 50 at 10-11 (citing D.I. 34 at ¶¶ 217-44)) Plaintiffs argue that "[u]nder a clearly-delineated sub-heading in the Complaint, Plaintiffs detail the alleged statements and omissions in the Merger Proxy that rendered it materially false or misleading and describe precisely why this was the case." (*Id.*; *see also id.* at 2 ("Far from a 'puzzle' pleading, the Complaint describes the Merger Proxy in detail and outlines exactly which portions of the Merger Proxy were materially false and misleading."))

---

[6] The Court notes Stem also raises this argument in its briefing. (D.I. 41 at 18)

Plaintiffs' Complaint—including the 28 paragraphs that describe the Merger Proxy (the "Merger Proxy paragraphs")—surely is a puzzle. And the 28 paragraphs that Plaintiffs point the Court to most certainly do not "detail" the alleged materially false or misleading statements at issue and "describe precisely why this was the case." Instead, they (and the Complaint more broadly) leave the reader well confused on these fronts.

The Merger Proxy paragraphs begin by explaining how the Merger Proxy was filed in March 2021 pursuant to Section 14(a), and how it called for shareholders to take a number of actions, including to: (1) consider and vote to approve the proposed merger with Legacy Stem; (2) consider and vote on certain charter proposals; (3) consider and vote on a proposal to approve issuance of certain shares on the New York Stock Exchange; and (4) approve an incentive plan proposal. (D.I. 34 at ¶¶ 217-21) Then the Merger Proxy paragraphs list out various statements made in the Merger Proxy—a least 17 different statements in all, many of which are set out in very lengthy block quotes. (*Id.* at ¶¶ 222-38) Sometimes, these quoted portions of the Merger Proxy include certain material that is bolded and italicized, suggesting that the pleader considers them to be particularly important. (*See, e.g., id*. at ¶¶ 222-32) Yet nowhere in these paragraphs, or in the paragraphs following them, does the Complaint explain *why* it has bolded and italicized any such content, or *why* it is that these bolded or italicized portions are said in some way to relate to any alleged misstatements or omissions at issue. (*Id.*); *see also City of Southfield Fire & Police Ret. Sys.*, 2024 WL 4370833, at *7 ("At the outset, the Court notes that many of the false and misleading statements alleged in the [complaint] are lengthy block quotes that are at places highlighted with bold and italics. This formatting leaves the Court and Defendants to guess whether Plaintiff is claiming that only the highlighted portions are actionable misstatements or the highlighting is merely for emphasis and the entire paragraph is false or

13

Case 3:23-cv-02329-MMC   Document 130-1   Filed 02/03/25   Page 14 of 20
Case 1:23-cv-01011-MN   Document 73   Filed 01/31/25   Page 14 of 20 PageID #: 2610

misleading."); *Lauria v. Biosante Pharms., Inc.*, 968 F. Supp. 2d 951, 957-59 (N.D. Ill. 2013) (same). Moreover, the various block quotes are often repetitive. In a number of them, the same material is excerpted that had previously been excerpted in a prior paragraph, but now with different portions of that material being highlighted for emphasis. (*See, e.g.,* D.I. 34 at ¶¶ 227, 229, 231, 232, 237, 238) And this all happens with no acknowledgement that such repetition is occurring, nor with any explanation as to what the pleader is trying to convey by doing this. Additionally, the Complaint makes no effort to place any of the alleged false or misleading statements into understandable categories that might otherwise assist the reader. *See Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, Civ. No. 16-112-GMS CONSOLIDATED, 2017 WL 3891676, at *3 (D. Del. Sept. 6, 2017).

Then the Merger Proxy paragraphs seem to try to sum up in one paragraph—paragraph 239—by simply referring back to all of the quoted material that came before it, and asserting generally that this material shows that the Merger Proxy was:

> [M]aterially false and misleading because it created a false impression of Legacy Stem's business, operations, and prospects and, relatedly the value of the Company's investment and future post-Merger. The Merger Proxy failed to disclose, *inter alia*: (1) Legacy Stem's business and competitive standing were overstated, particularly concerning its strategic partnerships and revenues tied to its software; [and] (2) the post-Merger Company's business and financial prospects were also exaggerated.

(*Id.* at ¶ 239) But in this paragraph, the Complaint never clearly explains what it is talking about. It does not specify what "business, operations and prospects" or "value of . . . investment and future post-Merger" or "business and competitive standing" or "strategic partnerships and

14

revenues"-type information it is speaking to.[7] And to the extent the pleading is asserting that portions of the previously-referenced block quotes give off one of the types of "false impression[s]" at issue, it never indicates *which* portions it is referring to, or *why* that is so. *See City of Southfield Fire & Police Ret. Sys.*, 2024 WL 4370833, at *7 ("[I]n addition to lack of clarity regarding *which* statements are purportedly actionable, it is also unclear *why* each statement is false or misleading.") (emphasis in original).[8] The additional allegations found in the body of the First Claim itself are no different. (*See, e.g., id.* at ¶¶ 459-60)

It should go without saying that the Court and Defendants "should not have to play connect-the-dots in order to identify the facts and trends upon which plaintiffs base their claim." *Lord Abbett*, 2017 WL 3891676, at *3.[9] And yet that is what the Plaintiffs' allegations regarding

---

[7] To the extent those references are meant to relate to other content in the 519-paragraph Complaint, the Complaint's allegations need to *make clear* what is being referred to. And they do not.

[8] Just by way of example, in the Merger Proxy paragraphs, the Complaint includes the following bolded and italicized statement (contained in a larger block of text): ***"Stem enables consumers and partners to optimize energy use by switching between battery power, onsite generation and grid power."*** (D.I. 34 at ¶ 228 (emphasis in original))  Is this statement alleged to be "materially false and misleading"?  If so, why?  Is the allegation that this statement has something to do with creating "a false impression of Legacy Stem's business, operations, and prospects and, relatedly the value of the Company's investment and future post-Merger"? (*Id*. at ¶ 239)  If so, how?  Or does it relate to the assertion about how the proxy overstated "Legacy Stem's business and competitive standing" or exaggerated its "business and financial prospects"? (*Id.*)  Or is it there for some other reason?  Is its falsity related to other allegations in some other portion of the pleading?  The reader (and more importantly Defendants) are never told.

[9] *See also Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*, No. 13 C 2111, 2014 WL 3610877, at *6 (N.D. Ill. July 22, 2014) (finding certain reasons insufficient—pleaded in the format "Defendants' statements in paragraphs 142-158 above . . . were false and misleading when made, and/or omitted material facts, for the following reasons . . ."—which were "not linked to any specific statement but rather [were] alleged to be generally applicable to all allegedly misleading statements and omissions" in a manner that was "not sufficient"); *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013) (finding the complaint to be a puzzle pleading despite the plaintiffs' attempt to connect the alleged omissions to particular statements, because the plaintiffs "continue[d] to do so in a

15

the Merger Proxy would have the reader do. Thus, the Complaint's failure to set out its allegations with clarity and specificity amounts to improper puzzle pleading, and lacks the detail required by both the PSLRA and Rule 8. *See Gera*, 2024 WL 3818602, at *12 (holding the plaintiff's assertion that block quotes from proxy statements were false or misleading "because they led investors to believe that the Individual Defendants followed [the company's] code of conduct and performed their role in risk oversight, and because the statements failed to disclose certain information regarding [the company's] technology, potential unprofitability, past business practices, and merger" was too vague of an explanation to satisfy PSLRA's particularity requirement and Rule 8(a); the plaintiff needed to "identify the exact portions of the quotes that do any of these things and explain—in detail and with specificity—how they do so"); *In re AstraZeneca PLC Sec. Litig.*, 21-CV-722 (JPO), 2022 WL 4133258, at *6 (S.D.N.Y. Sept. 12, 2022) (holding that, rather than demonstrating how and why each statement was materially false or misleading, the amended complaint was a puzzle pleading that "in boilerplate fashion, . . . identifies statements through the class period, italicizes them within long block quotes, and then, after each one, repeats a copy-and-pasted list of omissions"), *aff'd sub nom.* 2023 WL 3477164, at *6 (2d Cir. May 16, 2023); *cf. Petersen*, 2024 WL 4602710, at *4-5 (dismissing claims in the Securities Action on the ground that the relevant complaint was a puzzle pleading that was not in compliance with the PSLRA or Rule 8, where the complaint listed 179 statements, and then provided an "amalgam of 'reasons' why" all such statements were false, in a confusing fashion).

      Until it understands with specificity and clarity what portions of the Merger Proxy are said to be false and misleading and why, the Court cannot discern whether there is a viable

---

general manner that require[d] the reader to guess what particular statements they mean or how those statements were rendered false and misleading").

16

Section 14(a) claim here (or entertain many other of Defendants' arguments as to why such a claim is or is not wanting). Therefore, the Court recommends that the Individual Defendants' Motion to Dismiss the First Claim be granted for failure to comply with the PSLRA's heightened pleading requirements (and indeed, with even Rule 8's requirements).

Plaintiffs ask that if the motions are granted as to the First Claim, that they be permitted leave to amend. (D.I. 50 at 19-20) Because the Court cannot say for sure that Plaintiffs could not plead a viable Section 14(a) claim at this stage, and in light of Federal Rule of Civil Procedure 15's admonition that leave to amend should be freely permitted "when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), the Court recommends that dismissal of the First Claim be without prejudice.

### C.     State Law Claims

Plaintiffs' remaining claims are all based in Delaware state law. (D.I. 34 at ¶¶ 465-97, 513-19) The Court has discretion as to whether to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(a); *City of Detroit Police & Fire Ret. Sys.*, 2021 WL 877720, at *7. Where the plaintiff's federal claims have been dismissed, the district court "'*must* decline' to exercise supplemental jurisdiction . . . 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative reason for doing so.'" *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (citation omitted) (emphasis in original).

Plaintiffs have not articulated an understandable basis as to why this Court should retain jurisdiction over the state law claims if the federal claims (i.e., the First, Seventh and Eighth Claims) are dismissed. (*See* D.I. 49 at 6; D.I. 50 at 19; D.I. 61 at 4) Because the Court recommends dismissal of all federal claims, it also recommends that the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismiss those claims. *See*

17

*Mack v. Resolute Energy Corp.*, Civil Action No. 19-77-RGA, 2020 WL 1286175, at *14 (D. Del. Mar. 18, 2020) (dismissing federal securities claims with leave to amend, and declining to exercise supplemental jurisdiction over an accompanying state law claim); *see also City of Detroit Police & Fire Ret. Sys.*, 2021 WL 877720, at *8; *Kooker*, 497 F. Supp. 3d at 9; *Franklin v. Doheny*, C.A. No. 20-53-RGA, 2022 WL 2064972, at *4 (D. Del. June 8, 2022), *report and recommendation adopted sub nom.*, 2022 WL 3099235 (D. Del. June 23, 2022).[10]

Therefore, the Court recommends dismissal of the state law claims (i.e., the Second, Third, Fourth, Fifth, Sixth and Ninth Claims) on this basis without prejudice.[11]

### D.     Motion to Intervene

After Defendants filed their respective motions, Manetta filed his Motion to Intervene. (D.I. 48)  In that Motion, Manetta explains that he is investigating whether to bring derivative claims on behalf of Stem (claims as to which he served an inspection demand pursuant to 8 Del. C. § 220, or "Section 220"), and that he seeks to permissively intervene for the limited purpose of:  (1) seeking a stay of this action while he pursues his Section 220 demand; or (2) limiting the

---

[10]     To the extent Plaintiffs argue that Defendants have "waived" the right to assert that the Court should decline to exercise jurisdiction over the state law claims (if the Court determines that the federal claims should be dismissed), (D.I. 50 at 19), the Court disagrees. Stem noted in its briefing that if the federal claims were dismissed, the Court could always decline to exercise jurisdiction over the state law claims.  (D.I. 41 at 1)  And in any event, the decision as to whether to exercise supplemental jurisdiction is one for the Court to make.

[11]     The Court notes that Stem also argues that, *inter alia*, the state law claims should not proceed in this Court due to the presence of a forum selection clause in Stem's certificate of incorporation that directs that such claims be brought in the Delaware Court of Chancery. (D.I. 41 at 8-9; D.I. 61 at 3-4; *see also* D.I. 44, ex. 25 at Art. XI § 11.1)  Plaintiffs' primary response to this is that Defendants waived the right to make this argument as part of Defendants' agreement that this case should be transferred to this Court from the Northern District of California.  (D.I. 49 at 5-6)  In light of the Court's recommended resolution above, the Court need not reach this issue.

collateral estoppel effect of any potential adverse ruling on Defendants' motions to dismiss to the named Plaintiffs only (and not to him). (D.I. 48-1 at 1-3) The Court notes that the impetus for the Motion to Intervene is Manetta's concern that if the Court issues an "adverse ruling on [the issue of] demand futility[,]" he will "likely [be] precluded from relitigating an adverse ruling on" that issue. (D.I. 48-1 at 8; *see also id*. at 7; D.I. 57 at 14; D.I. 64 at 3, 7-8) However, herein, the Court has not ruled on demand futility; therefore, no decision herein could be given preclusive effect on those grounds. *See Drulias v. Guthrie*, Case No. 2:19-cv-01636-SVW-AGR, 2019 WL 13240415, at *6 (C.D. Cal. Oct. 23, 2019). For this reason, the Court recommends that the Motion to Intervene be denied as moot. *Id.*

## IV.     CONCLUSION

For the reasons stated above, the Court recommends that the Individual Defendants' Motion to Dismiss be GRANTED without prejudice as to the First Claim. It recommends that Stem's Motion to Dismiss be GRANTED as to the Second through Ninth Claims, in that the Court grant that motion as to the Seventh and Eighth Claims with prejudice, and grant the motion as to the state law claims without prejudice (i.e., by declining to exercise jurisdiction over the state law claims where no federal claim has been successfully pleaded).[12] Additionally, the Court recommends that the Motion to Intervene be DENIED as MOOT.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.

---

[12]     In light of the nature of the Court's recommended resolution here, the Court need not address at this time Stem or the Individual Defendants' other arguments as to why the claims should be dismissed.

Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 31, 2025

                                                                                               Christopher J. Burke
                                                                                               UNITED STATES MAGISTRATE JUDGE